IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JAMES HIGGS,<br><br>Plaintiff,<br><br>v.<br><br>VERIZON COMMUNICATIONS, INCORPORATED, and TRANSUNION LLC<br><br>Defendants. | 1:25-cv-37 |

**MEMORANDUM OPINION AND ORDER**

Lindsey A. Freeman, United States District Judge.

Before the Court are Plaintiff James Higgs's ("Mr. Higgs") motion to remand this case to state court, Dkt. 16, and Defendant Verizon Communications, Inc.'s ("Verizon") renewed motion to compel arbitration and dismiss or stay amended complaint, Dkt. 21. Both motions have been fully briefed and are ripe for adjudication. For the reasons set forth below, the Court finds that removal was proper, but that a genuine dispute of material fact exists as to whether Mr. Higgs ever agreed to arbitrate with Verizon. Accordingly, Mr. Higgs's motion to remand is DENIED, and Verizon's motion is HELD OPEN pending a summary trial under 9 U.S.C. § 4 on whether Mr. Higgs and Verizon formed an arbitration agreement.

## BACKGROUND

Mr. Higgs first opened a Verizon account ("Account 1") on February 28, 2008. *See* Dkt. 14 ¶ 3. Over fifteen years later, on November 25, 2023, Verizon suspended Account 1 for nonpayment, then canceled it and issued a final bill on January 13, 2024. *See id.* Verizon's records show that a second account, number 0826973614-0001 ("Account 2"), was opened in Mr. Higgs's name on May 20, 2024, and disconnected for nonpayment on July 21, 2024. *See id.* ¶ 4. But Mr. Higgs denies opening Account 2 and claims it is the product of identity theft. *See* Dkt. 24 at 1; Dkt. 24-1 ¶ 8. According to Mr. Higgs, on or around September 23, 2024, he attempted to switch his mobile number from a contract account to a prepaid account, and after that transfer failed, a Verizon agent created a "phantom test account" to diagnose the problem, which he identifies as Account 2. *See* Dkt. 18 ¶¶ 17–19.

Verizon billed Account 2 and reported the unpaid balance to credit reporting agencies, including Defendant TransUnion LLC, which in turn reported it to third parties. *See* Dkt. 18 ¶¶ 3–4, 13, 16. According to the amended complaint, Mr. Higgs repeatedly reached out to Verizon and TransUnion to correct the account but was unsuccessful. *See id.* ¶¶ 4–7. On December 11, 2024, Verizon sent Mr. Higgs a letter confirming that it had asked the major credit reporting agencies to delete Account 2 from his credit report. *See* Dkt. 24 at 5. The next day, Mr. Higgs filed this action in Cabarrus County District Court,

*See* Dkt. 1 ¶ 1, alleging violations of the Fair Credit Reporting Act, the Truth in Lending Act, and North Carolina consumer protection statutes, Dkt. 18 ¶ 9.

Verizon petitioned to remove the state court action to this Court, Dkt. 1, and has moved to compel arbitration in this case. *See* Dkt. 12. To support its contention that Mr. Higgs cannot bring these claims in court because he signed an arbitration agreement, Verizon has submitted three documents that it alleges bear Mr. Higgs's signature underneath an arbitration disclaimer. *See* Dkt. 14 ¶ 9. First, a service summary for Account 1 dated March 11, 2018, bearing a signature of just the letter "J." *See* Dkt. 14-2 at 2, 5. Second, a receipt dated May 16, 2024, bearing a cursive signature of the full name "James." *See* Dkt. 14-3 at 3. And third, another receipt, dated May 21, 2024, bearing a squiggle for a signature. *See* Dkt. 14-4 at 3. Neither May 2024 receipt identifies an account number, but both receipts list the same wireless number that appears on the 2018 service summary for Account 1. *Compare* Dkt. 14-2 at 2, *and* Dkt. 14-3 at 2, *with* Dkt. 14-4 at 2. Printed above all three signatures are disclaimers stating that the signer agrees to the Verizon Wireless Customer Agreement, "including [to] settlement of dispute[s] by arbitration instead of jury trial." Dkt. 14-2 at 4-5; *see* Dkts. 14-3 at 3, 14-4 at 3. Further, the versions of the customer agreement in effect at the time of each acknowledgment, and in September 2024, each contain a mandatory arbitration clause. *See* Dkts. 14 ¶¶ 10-12, 14-5 at 7, 14-6 at 7, 14-7 at 7.

In a signed affidavit declaring under penalty of perjury that his statement is true, Mr. Higgs denies that the electronic signatures are his and claims that he has never received nor viewed any agreement to arbitrate with Verizon. *See* Dkt. 24-1 ¶¶ 2-5. He further claims that the May 16, 2024, receipt shows a $75.46 charge to a Visa card ending in 4746 alongside an electronic signature that is not his own, *see* Dkt. 24 at 3; *see also* Dkt. 14-3 at 3 ("Amount tendered: $75.46"), and he has submitted a May 14, 2024, letter from the State Employees' Credit Union confirming that he disputed a charge on that card, *see* Dkt. 24 at 8.

## ANALYSIS

### I. Removal was proper because the amended complaint alleges a federal cause of action.

The Court begins with its ability to hear this case. This case was properly removed from state court to federal court because Mr. Higgs alleges Verizon violated the Fair Credit Reporting Act, a federal statute. A defendant may remove a civil action brought in state court to the court of the federal district that embraces the state court so long as the district court has original jurisdiction. *See* 28 U.S.C. § 1441(a). Mr. Higgs originally filed his complaint in the Cabarrus County Courthouse, *see* Dkt. 2 at 2, which is within the Middle District of North Carolina.

And this Court has original jurisdiction because Mr. Higgs's claims arise under federal law. A district court has original jurisdiction if the plaintiff could have initially

filed the complaint in federal court because it includes claims arising under federal law. *See Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019); *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (the federal question must appear on the face of the plaintiff's well-pleaded complaint). The amended complaint plainly states—and Mr. Higgs even explicitly admits that there is—a federal cause of action. *See* Dkt. 18 ¶ 9 ("Plaintiffs claims arises under Federal Law [sic], namely the Fair Credit Reporting Act 15 U.S.C. Section 1681."). Mr. Higgs nonetheless argues that removal was inappropriate because *Verizon* lacks a federal claim. *See* Dkt. 16 at 1. But the relevant question is whether Mr. Higgs alleges a federal claim—not Verizon—and he does. *See* Dkt. 18 ¶ 9. Removal was therefore proper.

## II. It is unclear whether Mr. Higgs signed an acknowledgment and thus whether he is bound by an arbitration provision.

There is a genuine dispute as to whether Mr. Higgs signed an acknowledgment that would bind him to the terms of the customer agreement, including the arbitration provision. The party seeking "to compel arbitration under the Federal Arbitration Act bears the burden of establishing the existence of a binding contract to arbitrate the dispute." *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 456 (4th Cir. 2017). Courts evaluate motions to compel arbitration under a summary judgment standard, meaning they may "consider materials other than the complaint and its supporting documents." *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944

F.3d 225, 234 (4th Cir. 2019) (likening burdens between Fed. R. Civ. P. 56 and 9 U.S.C. § 4). The Court may compel arbitration only if there are no "genuine issues of material fact regarding the existence of an agreement to arbitrate." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015).

A motion to compel arbitration is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, which explains when an arbitration provision is or is not enforceable:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*Id.* § 2.

For Section 2 of the FAA to apply, and thus for Verizon to compel arbitration in this matter, Verizon must show:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [Mr. Higgs] to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002).

Here, the first, third, and fourth elements are met. A dispute has arisen as to whether Account 2 was wrongfully reported to credit agencies. *See* Dkt. 18 ¶¶ 3-4. The transaction relates to interstate commerce because Verizon, a New York corporation, provides wireless service nationwide, and the dispute concerns wireless service allegedly

provided to Mr. Higgs, a North Carolina resident. *See id.* ¶¶ 10-11; Dkt. 22 at 9-10. And Mr. Higgs has refused to arbitrate. *See generally* Dkt. 24.

But there is a genuine dispute as to the second element: whether a written arbitration agreement exists. Under the FAA, arbitration provisions are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, meaning parties contesting arbitration provisions can raise "generally applicable contract defenses" such as lack of mutual assent. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). So before this case may be referred to an arbitrator, the Court must determine whether Mr. Higgs and Verizon formed a valid arbitration agreement. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019); *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 234 ("Section 4 [of the FAA] thus requires that the district court—rather than an arbitrator—decide whether the parties have formed an agreement to arbitrate.").

To determine whether an arbitration agreement was formed on a motion to compel arbitration under Section 4 of the FAA, courts apply the "ordinary state-law principles that govern the formation of contracts." *Id.* at 236. Because Mr. Higgs lived in North Carolina when he allegedly executed the arbitration agreements at issue, Dkt. 18 ¶ 10, North Carolina contract law appears to govern the formation of the contested

agreements. *Boyles v. Langmore Cap., LLC*, 1:20-cv-545, 2020 WL 4719282, at *2 (M.D.N.C. Aug. 13, 2020).

As noted, a genuine dispute remains over whether Mr. Higgs signed the written arbitration agreements, and therefore whether the parties ever formed an agreement. If the party moving to compel arbitration produces evidence of "a written agreement that includes an arbitration provision that purports to cover the dispute," *Dillon v. BMO Harris Bank, N.A.*, 173 F. Supp. 3d 258, 263 (M.D.N.C. 2016), the party opposing arbitration "must make an unequivocal denial that an arbitration agreement exists—and must also show sufficient facts in support," *Chorley Enters.*, 807 F.3d at 564. "This burden on the opponent only arises, however, after the proponent produces credible, admissible evidence which satisfies the court that there was an arbitration agreement." *Dillon*, 173 F. Supp. 3d at 264. When a party unequivocally denies "that an arbitration agreement exists" and succeeds in "show[ing] sufficient facts in support thereof," the court must conduct a trial under Section 4 of the FAA. *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 234 (quoting *Chorley Enters.*, 807 F.3d at 564) (citation modified); 9 U.S.C. § 4 ("If the making of the arbitration . . . be in issue, the court shall proceed summarily to the trial thereof.").

Verizon has produced three acknowledgments that it alleges Mr. Higgs signed, each of which states that the signer agrees to the customer agreement and to arbitration. *See* Dkts. 14-2 at 4-5, 14-3 at 3, 14-4 at 3. The customer agreements plainly include arbitration clauses that cover "any dispute that in any way relates to or arises out of this

agreement." Dkt. 14-7 at 7; *see* Dkts. 14-5 at 7, 14-6 at 7. And Verizon has submitted a sworn declaration from an employee stating—based on a review of Verizon's business records—that Mr. Higgs opened both accounts and signed each acknowledgment. *See* Dkt. 14 ¶¶ 2-4, 9.

But Mr. Higgs unequivocally denies signing any agreement and instead claims identity theft. *See* Dkt. 24 at 1. The Court has reviewed the signatures in connection with the March 11, 2018, May 16, 2024, and May 21, 2024, acknowledgments. Dkts. 14-2, 14-3, 14-4. Each signature looks different. In support of his claim, Mr. Higgs provides a letter from Verizon stating that amendments have been filed with credit reporting agencies to delete Account 2 from his credit report. *See* Dkt. 24 at 5. Given this showing, the Court cannot determine if any of the signatures belong to Mr. Higgs. That issue, therefore, must proceed to summary trial under Section 4 of the FAA. *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 236.

**III. The Court must hold a Section 4 summary trial to determine whether Mr. Higgs signed the acknowledgements.**

The Court must hold a summary trial to establish whether Mr. Higgs's signatures on the acknowledgments are genuine. 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."); *see also Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021) ("When the parties disagree as to whether an agreement to arbitrate has been formed, the

dispute is generally for courts to decide." (citation modified)). The trial will be limited to deciding whether Mr. Higgs opened Account 2 and whether he signed the acknowledgments. The Court does not anticipate it will take longer than one day.

Moreover, it will be a bench trial because Mr. Higgs has not properly requested a jury trial under Section 4 of the FAA. "The right to a jury trial under Section 4 of the FAA . . . is not automatic." *Chorley Enters.*, 807 F.3d at 564. To obtain a jury trial under Section 4, the non-moving party must: (1) unequivocally deny that an arbitration agreement exists; (2) make a special demand for a jury trial on the specific issue of arbitrability; and (3) present enough supporting evidence that no agreement exists such that a reasonable jury could return a favorable verdict under the applicable law. *See Stover v. Fluent Home, LLC*, No. 5:21-cv-191, 2022 WL 823452, at *3 (S.D.W. Va. Mar. 17, 2022) (quoting *Chorley Enters.*, 807 F.3d at 564); *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 242 (noting that the non-moving party may "on or before the return day of the notice of application, demand a jury trial *of such issue*, and upon such demand the court shall make an order referring the issue or issues to a jury" (citing 9 U.S.C. § 4)) (emphasis added); *King v. Cap. One Bank (USA), N.A.*, No. 3:11-cv-68, 2012 WL 4404862, at *1 (W.D. Va. Sept. 25, 2012) ("Plaintiff failed to make the special jury demand required by the FAA.").[1]

---

[1] Several circuits have interpreted Section 4's requirement that the non-moving party "demand a jury trial *of such issue*." 9 U.S.C. § 4 (emphasis added). They have concluded that the language requires plaintiffs to make a "specific demand for a jury trial on a specific issue related to the 'making of the arbitration agreement,'" and that a general jury

Mr. Higgs has satisfied some, but not all, of Section 4's jury-trial requirements. Although his opposition brief to Verizon's renewed motion to compel arbitration unequivocally denies the existence of a valid arbitration agreement, Dkt. 24 at 2-3,[2] and his attached declaration provides evidence to that effect, Dkt. 24-1 ¶¶ 4-5, Mr. Higgs has not made a special demand for a jury trial on the question of whether an arbitration agreement was made.[3] Neither the operative complaint, Dkt. 18, nor Mr. Higgs's

---

demand will not do. *See Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1349 (11th Cir. 2017); *Yeomans v. World Fin. Grp. Ins. Agency, LLC*, No. 20-16937, 2021 WL 5356537, at *2 (9th Cir. Nov. 17, 2021) ("[T]he general demand for a jury trial in [plaintiffs'] operative complaint is insufficient to demand a jury trial under the FAA because they did not allege the existence of an arbitration agreement in their complaint."); *see also Domer v. Menard, Inc.*, 116 F.4th 686, 713 (7th Cir. 2024) (Hamilton, J., concurring in the judgment) ("A party who seeks a jury trial on whether an arbitration agreement exists must request it specifically and quickly to comply with section 4 of the FAA.").

[2] Courts have found that a statement such as, "Defendant's Arbitration Clause . . . Does Not Allow for a Meeting of the Minds," satisfies Section 4's unequivocal-denial requirement. *See Stover v. Fluent Home, LLC*, No. 5:21-cv-191, 2022 WL 823452, at *3 (S.D.W. Va. Mar. 17, 2022) (quoting Pl.'s Resp. in Opp'n to Def.'s Mot. to Compel Arb. at 14, ECF No. 10 (S.D.W. Va. May 28, 2021)). The Court finds Mr. Higgs's statements that Verizon "has failed to show that a Valid agreement to Arbitrate exist[s]" for want of "Assent" and "Mutuality of Obligation," Dkt. 24 at 2-3, constitutes an "unequivocal denial." And Mr. Higgs's sworn declaration that he has "[n]ever received or viewed any contractual agreement to Arbitrate with Verizon . . . or its agents" provides enough supporting evidence for a reasonable jury to find for him on the issue. All for naught, though, because Mr. Higgs failed to make a special demand for a jury trial on arbitrability.

[3] Courts have found that a statement such as, "Plaintiffs . . . move for and request a jury trial on the issue of arbitrability," satisfies Section 4's special-demand requirement. *See Waltrip v. Pilot Travel Ctrs.*, No. 2:21-cv-642, 2022 WL 2192892, at *3 (D.N.M. June 17, 2022) (citing Pls' Mot. for Jury Trial on Arbitrability at 5, ECF No 33 (D.N.M. Nov. 18, 2021)); *see also* Pls' Resp. to Def's Mot. to Compel Arb. & Req. for Jury Trial Under Fed. Arb. Act

response to Verizon's renewed motion to compel arbitration, Dkt. 24, contains a specific demand for a jury trial on the authenticity of the signatures or any other issue related to arbitrability. The amended complaint's general demand for a jury trial, Dkt. 18 at 5, will not do. The Court will therefore hold a bench trial. *See Berkeley Cnty. Sch. Dist.*, 944 F.3d at 242 (noting jury trial can be waived and the need to demand a jury trial in the response to the arbitration motion).

When Section 4 calls for a trial, trial courts and litigants have discretion in deciding the appropriate procedure. *See id*. The Court delegates its discretion to the parties at this time. The parties should decide whether a brief period of discovery is appropriate (and, if so, what the bounds of that discovery should be); when the parties will be ready for trial on the limited issues identified by the Court; and, if there is discovery, whether the parties agree to submit the questions on documentary and deposition evidence in lieu of a trial. The parties may also discuss and suggest other procedures and ways forward in this matter.

Should the parties agree on the appropriate trial procedures, they shall file a joint submission by no later than 21 days from the date of this Order. If they cannot agree,

---

at 25, ECF No. 26, *Miller v. Maxim Healthcare Servs., Inc.*, No. 1:22-cv-1782, 2023 WL 2957413 (D. Md. Oct. 31, 2022) ("Plaintiffs respectfully request . . . a jury trial on the issue of contract formation, as required by the FAA"). But no such statement appears in Mr. Higgs's amended complaint, Dkt. 18, or opposition brief to Verizon's renewed motion to compel arbitration, Dkt. 24.

each party shall file, also no later than 21 days from this Order, a brief of no more than 2,000 words that is limited to presenting its position on the appropriate trial procedures and answering the Court's questions raised above.

**CONCLUSION**

For the foregoing reasons, Mr. Higgs's motion to remand (Dkt. 16) is **DENIED**. Verizon's renewed motion to compel arbitration and dismiss or stay the amended complaint (Dkt. 21) is **HELD OPEN** pending further proceedings consistent with this Order. The parties shall file the submissions discussed in Section III within 21 days of the entry of this Order, October 19, 2026.

It is SO ORDERED.

This the 28th day of September, 2026.

LINDSEY A. FREEMAN
UNITED STATES DISTRICT JUDGE